**ROBERT'S TOURS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 77–3400.**

United States Court of Appeals, Ninth Circuit.

July 10, 1978.

Barry W. Marr (argued), Washington, D. C., for petitioner.

Michael S. Winer (argued), Washington, D. C., for respondent.

Before ELY, TRASK and TANG, Circuit Judges.

TRASK, Circuit Judge:

Robert's Tours is petitioning this court for review of a National Labor Relations Board (NLRB) order requiring it to bargain with ILWU, Local 142 (the Union). The Board is seeking enforcement of its decision and order reported at 232 NLRB No. 97 (1977).

Pursuant to a Stipulation for Certification Upon Consent Election, employees of Robert's Tours approved the Union as its bargaining agent by a 15 to 3 vote with 7 challenged, but undeterminative, ballots.

Objections to the election were filed by Robert's Tours. For the purposes of this appeal, the key objections were 1) the maintenance by employees of a voter list, and 2) electioneering by union supporters along the line of march to the polls. An investigation of these charges was conducted, with the Regional Director concluding that no improper conduct occurred. The Regional Director's report and recommendations were adopted by the Board.

Thereafter, Robert's Tours refused to bargain with the Union. The Union filed an unfair labor practice charge with the Board alleging violation of sections 8(a)(1) and 8(a)(5)[1] of the National Labor Relations Act.[2] Robert's Tours admitted its refusal to bargain, but contested the validity of the election.

On a motion for summary judgment, the Board found Robert's Tours in violation of the Act, denying the claims of election improprieties. This appeal followed.

---

**1.** 29 U.S.C. §§ 158(a)(1) and (a)(5).

**2.** 29 U.S.C. §§ 151 et seq.

This court finds the Board's order approving the election and finding Robert's Tours to be in violation of the Act to be deficient in two respects. We order the matter returned for certain specific findings by the Board.

■ The first of these deficiencies involves the keeping of an unauthorized voter list. It has been a long established policy of the Board to prohibit anyone from keeping a list of those who have voted other than the official eligibility list. *Tom Brown Drilling Co.*, 172 NLRB 1267 (1968); *Piggly-Wiggly # 011*, 168 NLRB 792 (1967); *A.D. Juilliard and Co.*, 110 NLRB 2197 (1954); *Belk's Department Store*, 98 NLRB 280 (1952); *International Stamping Co.*, 97 NLRB 921 (1951). The Regional Director's investigation concluded that several Union supporters were stationed between 100 and 150 feet from the polls. These employees had a list of voters. It appears that at least one employee was asked how he was going to vote as he headed toward the polling place. His name was then checked off of the list.

Under the above cited authority, the keeping of this list would require a new election, but there is a recognized exception to this blanket prohibition. If none of the voters, or only a small number, know that the list is being kept, then the possibility of coercion resulting from the list keeping is greatly reduced. *Locust Industries, Inc.*, 218 NLRB 717, 717 n.2 (1975); *Tom Brown Drilling Co., supra*; *A.D. Juilliard and Co., supra*. To support the Board's approval of the election, there would have to be a specific finding that the effect of the list keeping was *de minimus*. But, no such finding appears in the record. As a result, this court cannot say the exception to the rule has been met in this particular case.

■ The second deficiency involves Robert's Tours' argument that the Union supporters were campaigning in the polling area, or on the "line of march" to the polls. Both company and union parties are prohibited from carrying on conversations of any type in the polling area, or while the employees wait in line to vote. *Milchem, Inc.*, 170 NLRB 362 (1968).

There is no *per se* rule as to the outer limit at which campaigning can take place. *NLRB v. Aaron Brothers Corp.*, 563 F.2d 409 (9th Cir. 1977). Robert's Tours here seeks to extend the area in which there can be no campaigning by claiming the employees were on the "line of march," *i. e.*, voters were required to pass by the campaigners to get to the polls.

Unfortunately, the Regional Director's report and the Board's adoption of it do not provide this court with a very clear insight as to the physical setting of the polls. It might be possible to find that areas some distance from the polls should be closed to campaigning because they had to be passed through in order to vote. *See Performance Measurements Co., Inc.*, 148 NLRB 1657 (1964).

■ The purpose of the no campaigning rule near the polls is to allow voters quiet moments of appropriate reflection and a peaceful atmosphere for the casting of their votes. *Milchem, Inc., supra*. The physical proximity of the campaigners even 150 feet away may have been such that this policy would not have been served.

■ Because the record is unclear whether there was a list keeper and whether the circumstances surrounding that list keeping are substantial or merely "de minimus," an evidentiary hearing should be held to resolve the issue. In addition, the hearing should address the question whether there was electioneering within a prohibited zone by reason of its proximity to the actual voting area. *Star Expansion Industries Corp.*, 170 NLRB 364 (1968); *Milchem, Inc.*, 170 NLRB 362 (1968).

If the Board's approval of the election is to be upheld, there must be an evidentiary hearing and findings sufficient to support such approval in accordance with the views expressed in this opinion.

REVERSED and REMANDED.