956 F.2d 1167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
WAREHOUSE SUPERMARKETS OF ARIZONA, INC., dba Warehouse
Foods, Respondent.
 No. 90-70691.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 13, 1992.*
Decided March 4, 1992.
 
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The National Labor Relations Board (Board) petitions for enforcement of its order requiring Warehouse Supermarkets of Arizona, Inc. (Warehouse) to bargain with the certified union. Warehouse refuses to bargain because it alleges that the third party conduct of a former supervisor was so coercive that the employees were unable to exercise their free choice in the election. We grant enforcement of the Board's order to bargain.[1]
 
 FACTS
 
 3
 In September of 1989, the United Food and Commercial Workers International Union, AFL-CIO (union) campaigned for election in the bargaining unit comprised of twenty of Warehouse's meat employees. On September 25, Larry Sherman, a former meat supervisor who had left the company one week before, sent a letter to the employees urging them to vote for the union. The letter stated that Warehouse's president had indicated to Sherman that "if the vote is in favor of him [the president] that he is going to replace most of the cutters and replace them with apprentices." When Warehouse's president learned of this letter, he told five employees and mangers that the letter was false and that he had no such plans. The union won the September 29th election by a vote of 16-3. In Warehouse's subsequent petition regarding the union's certification, a hearing officer found that Sherman's conduct did not invalidate the election. The Board affirmed this finding and held that Warehouse had committed an unfair labor practice by refusing to bargain with the union.
 
 STANDARD OF REVIEW
 
 4
 The Board's finding that misconduct does not taint an election sufficiently to require invalidation is one of fact that is reviewed under the substantial evidence standard. Did Bldg. Serv. Inc. v. NLRB, 915 F.2d 490, 494 n. 3 (9th Cir.1990); see also, Napili Shores Condominium Homeowners' Assoc. v. NLRB, 939 F.2d 717, 718 (9th Cir.1991).
 
 DISCUSSION
 
 5
 An election may be overturned if third party " 'coercive and disruptive conduct or other action ... is so aggravated that a free expression of choice of representative is impossible.' " NLRB v. Eskimo Radiator Mfg. Co., 688 F.2d 1315, 1319 (9th Cir.1982) (citation omitted). Courts are hesitant to overturn elections when statements cannot be attributed to the union or employer because there is less likelihood that those actions affected the election's outcome. Id.
 
 
 6
 The Sherman letter did not create a general atmosphere of fear and coercion that rendered the conduct of a free election impossible. In B.J. Titan, 1989-90 NLRB Dec. (CCH) p 15,769, (296 N.L.R.B. No. 88) (1989), the Board found that a supervisor's communication of possible antiunion retaliation by the employer was insufficient to invalidate an election. Here, Sherman's similar communication, as a former supervisor, of possible employer retaliation certainly cannot justify invalidating the Warehouse election.
 
 
 7
 Furthermore, we have considered the various elements outlined in Westwood Horizons Hotel, 270 N.L.R.B. 802, 803 (1984). On balance, they support the Board's conclusion that the statement by Sherman did not render a free election impossible. In particular, applying an objective standard,[2] the Board correctly determined that the nature of this threat by a former supervisor, actively campaigning for the union based on his personal opinion, was insufficient to coerce the employees into abandoning their free choice to choose a bargaining representative. See Napili Shores, 939 F.2d at 719 (current supervisor telling employees he had "done all he could do" to get them higher pay increases and that they would have to "go outside to get outside assistance" does not constitute coercive misconduct that justifies overturning election); NLRB v. Cal-Western Transport, 870 F.2d 1481, 1486 (9th Cir.1989) (dispatcher's activities in promoting and campaigning for union not coercive in light of his minimal supervisory authority over other employees); NLRB v. Columbia Cable TV Co., Inc., 856 F.2d 636, 637-38 (4th Cir.1988) (a former supervisor's telling employees, both before and after his resignation, about a "hit list" that the general manager had developed was insufficient to overturn election); NLRB v. Superior Coatings, Inc., 839 F.2d 1178, 1181 (6th Cir.1988) (union agent's conveying of employer's plans of post-election firings was merely campaigning for union support, not coercing the other employees into voting for the union).
 
 
 8
 ENFORCEMENT GRANTED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Warehouse Supermarkets filed for bankruptcy protection while this action was pending. However, it is well established that a bankruptcy filing does not stay the enforcement of an NLRB order. NLRB v. Continental Hagen Corp., 932 F.2d 828, 833-34 (9th Cir.1991)
 
 
 [2]
 While Warehouse's argument suggests the contrary, the proper standard is an objective one. Electra Food Machinery, 279 N.L.R.B. 279, 280 (1986); see Napili Shores, 939 F.2d at 719 (considering whether supervisor's participation had a reasonable tendency to coerce employees); NLRB v. Cal-Western Transport, 870 F.2d 1481, 1484 (9th Cir.1989) (same)