990 F.2d 1257
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
E-Z 8 MOTELS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
E-Z 8 MOTELS, INC., Respondent.
 Nos. 91-70569, 91-70699.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1993.
Decided March 24, 1993.
 
 Before GOODWIN, NOONAN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 E-Z 8 Motels, Inc. (the Company), petitions for review of the National Labor Relations Board's (the Board) final order finding the Company violated the National Labor Relations Act by refusing to bargain with the Hotel Employees and Restaurant Employees Union (the Union) after the Board certified the Union as the exclusive bargaining representative of a group of employees. The Board cross-applies for enforcement of its Order.
 
 
 3
 This court has jurisdiction pursuant to 29 U.S.C. §§ 160(e) and (f). " 'Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.' " Napili Shores Condominium Homeowners' Ass'n v. N.L.R.B., 939 F.2d 717, 718 (9th Cir.1991) (quoting N.L.R.B. v. A.J. Tower Co., 329 U.S. 324, 328 (1946)). "Accordingly, we will not overturn a Board's decision to certify a union unless the Board has abused its discretion." Id. (citing N.L.R.B. v. Cal-Western Transp., 870 F.2d 1481, 1484 (9th Cir.1989).
 
 DISCUSSION
 I. Certification
 
 4
 The Board has determined that it will set aside an election "in cases where a party has used forged documents which rendered the voters unable to recognize propaganda for what it is." Midland Nat'l Life Ins. Co., 263 N.L.R.B. 127, 133 (1982). The Board "will no longer probe into the truth or falsity of the parties' campaign statements, and ... will not set elections aside on the basis of misleading campaign statements." Id. Therefore, the substance of the representation will not be the basis for setting aside the election; it will be set aside only "because of the deceptive manner in which it was made, a manner which renders employees unable to evaluate the forgery for what it is." Id. This court approved the Midland Life decision in N.L.R.B. v. Best Products Co., Inc., 765 F.2d 903, 913 (9th Cir.1985).
 
 
 5
 The Company's position that the document was a forgery is untenable. The forged document exception "has only been applied by the Board in cases involving actual forgeries, which deceive the employees as to the source of campaign propaganda." Wolfrich Corp. d/b/a Thrifty Rent-A-Car, 234 N.L.R.B. 525 (1978). Here, the materials clearly came from the union. If a misstatement was made about the materials, it consisted of statements that the contract was actually in force when, in fact, the contract included in the materials was only proposed. Arguably, this misrepresentation was cured by the cartoon page. However, resolution of that question is not required, because the materials clearly did not constitute a forgery under Midland Life. The documents came from the union and the employees were not misled about this crucial fact.[1]
 
 
 6
 The Company urges us to adopt statements made by other circuits that a misrepresentation claim might prevail when a forgery cannot be shown, but the misrepresentation is so pervasive, material and fraudulent that it undermines the employees' freedom of choice. See Van Dorn Plastic Machinery Co. v. N.L.R.B., 736 F.2d 343, 348 (6th Cir.1984), cert. denied, 469 U.S. 1208 (1985); N.L.R.B. v. New Columbus Nursing Home, Inc., 720 F.2d 726, 729 (1st Cir.1983).
 
 
 7
 We decline to adopt the dicta in those cases. The documents in this case would not meet the test, so we do not need to consider whether such a test would be an appropriate response where the required findings could be made.
 
 
 8
 In view of the disposition we make of this case, we need not address the Company's arguments concerning the Spanish cartoon page, nor the Board's contention that the Company did not raise the issue in a timely fashion.
 
 II. Refusal to Conduct Hearing
 
 9
 The Board did not abuse its discretion in refusing to conduct a hearing on the charges. "To get a hearing on post-election objections a party must make a prima facie showing of facts that present 'substantial and material factual issues' which, if true, would constitute sufficient grounds to set aside the election." N.L.R.B. v. Masonic Homes of California, 624 F.2d 88, 89-90 (9th Cir.1980) (citing Valley Rock Products, Inc. v. N.L.R.B., 590 F.2d 300, 302 (9th Cir.1979); see also 29 C.F.R. § 102.69(d) (a "hearing shall be conducted with respect to those objections or challenges which the regional director concludes raise substantial and material factual issues").
 
 
 10
 As discussed above, the Company did not, and could not, show the material was a forgery. Short of such a prima facie showing, no hearing was required.
 
 III. Fees
 
 11
 The Board has requested fees pursuant to Fed.R.App.P. 38 on the grounds that the Company's petition was frivolous. "An award of sanctions is warranted when the result is obvious and the arguments on appeal wholly lack merit." Napili Shores, 939 F.2d at 721 (quotation omitted). In this case, although we rule against the Company, its arguments did not wholly lack merit.
 
 IV. Conclusion
 
 12
 The Board's order is ENFORCED IN FULL. No fees are assessed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Generally in law there is no forgery unless a signature is falsely produced. Here, the Agreement was unsigned leading, again, to the conclusion that there was no forgery. The Company argues that, in practice, collective bargaining agreements that have been agreed to are often circulated without signatures and, hence, the employees would have assumed the unsigned agreement to be in force. But practice of this kind is particularly within the Board's area of expertise. If the Board does not view an unsigned collective bargaining agreement as a forgery, we will not substitute our judgment for the Board's